**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KIZZIE BROWN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-08-168 |
| | * | |
| THE MARJACK COMPANY, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

*************************************************************************

**MEMORANDUM OPINION**

Plaintiff Kizzie Brown ("Brown") brings this action against Defendant Marjack Company, Inc. ("Marjack")[1] alleging sexual harassment and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), negligent hiring, training, and retention, negligent supervision, and intentional infliction of emotional distress. Currently pending before the Court is Defendant Marjack's Motion for Summary Judgment (Doc. No. 58). The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The issues have been briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will grant Defendant's Motion for Summary Judgment.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Marjack, a specialty market distributor, hired Plaintiff Kizzie Brown ("Brown") on or about August 3, 2006, to work in Marjack's distribution warehouse packing boxes. The distribution

---

[1] The Court dismissed individual Defendant Ebenezer Josiah from the case on October 1, 2008. Plaintiff also named "John Doe Company," "John Doe 1," and "John Doe 2," but never requested summonses for these entities. Thus, these parties will be dismissed from the suit, in accordance with the Plaintiff's Response to the Court's Order to Show Cause (Doc. No. 39).

warehouse was housed in the same site as the Marjack headquarters in Lanham, Maryland. Carl Booker ("Booker") was the Assistant Warehouse Manager through August 18, 2006, Lori Park ("Park") was the Branch Manager, and starting in 2006, Ebenezer Josiah ("Josiah"), who had been hired in 1997, was the Warehouse Lead. As Warehouse Lead, Josiah gave employees information and directions about warehouse operations, but did not have the official authority to hire, discipline, or terminate employees.

On Brown's first day of employment, Marjack gave Brown a copy of its Human Resources Manual ("HR Manual"), which contained its anti-harassment policy. This policy explained Marjack's prohibition of sexual harassment in the workplace and sexual harassment reporting procedures. The reporting procedure required:

> Any employee who believes that he or she is being harassed in violation of this policy or who becomes aware of harassment of a co-worker is expected to immediately bring the matter to the attention of the human resources department or a member of the executive team.

(Doc. No. 58, Ex. 2.) Brown signed an acknowledgment form on the date her employment began. This form indicated Brown recognized it was her responsibility to read and understand the HR Manual's contents. Marjack also gave Brown a new employee orientation packet, which she understood had the contact information for the members of the human resources ("HR") department and executive team, whom she was to notify if she experienced sexual harassment in the workplace. She read through the handbook, but never read the packet.

About two weeks after Brown began working at Marjack, Josiah made three offensive comments to her. Josiah commented, "You have four kids? The p—y must be good." Later, he told Brown a potential employee's "butt way bigger" than hers. He also offered to give her a ride home from work and suggested "[w]e could get dinner after." (Brown Dep. 62-63, 65, Feb. 12, 2009.)

Plaintiff's Second Amended Complaint also represents that Brown "directly offered her cash for sex and showed her money and a condom that he kept in his wallet," (Second Am. Compl. ¶ 1.) and that Josiah "further threatened Plaintiff by stating that he could get her in trouble because his wife worked upstairs." (Second Am. Compl. ¶ 13.) But, discovery has not resulted in any evidence of these allegations.

Brown reported these offensive comments to her co-worker, Gregory Gibson, whom she knew was not a member of the executive team or HR department. Latresa Peoples, Warehouse Administrative Assistant, overheard the remarks and told Brown she "knew what [Brown] was talking about." (Brown. Dep. 54-55.) Later that day, on August 17, Brown reported the inappropriate comments to Booker, who recommended she look at her HR Manual. This date was also Booker's final day of employment as he had been terminated. (Brown Dep. 37-38, 87.)

According to Brown's deposition testimony, Josiah did not make any other offensive comments to Brown after that day, though he may have offered her a ride home on a few other occasions. (Brown Dep. 102-103; Eagles Report 14.) Neither Gibson, nor Peoples, nor Booker reported Brown's complaints to a member of the HR department or executive team. (Gibson Dep. 68-69, Peoples Dep. 56, Booker Dep. 66-67.)

On or about September 22, 2006, Brown reported Josiah's sexual harassment to Park. (Brown Dep. 59-60, 93-94.) Park then informed Pamela Paladino, Vice President of HR and Operations, of the complaint on the same day. (Paladino Decl. ¶ 15.) On or about September 25, Paladino met with the members of the executive team and informed them of the sexual harassment of Brown by Josiah that Park had reported. On October 4, 2006, Marjack interviewed personnel from the Eagles 3 LLC ("Eagles 3") and requested a written proposal for an investigation into the

harassment claims against Josiah. According to Marjack, on October 9, 2006, Eagles 3 began the investigation into Josiah's sexual harassment. On October 12, 2006, after Eagles 3 interviewed Josiah, Marjack suspended Josiah, pending the results of the investigation. On October 17, 2006, Eagles 3 concluded its investigation and found that Josiah had sexually harassed Brown, Peoples, and another warehouse employee. (Paladino Decl. ¶ 22.) More than four months later, on February 27, 2007, Brown voluntarily resigned from Marjack and accepted a job with the District of Columbia Public Schools. (Brown Dep. 128-29.)

Brown timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC made a finding of discrimination but conciliation failed, and on October 24, 2007, the EEOC issued Plaintiff a notice of right to sue.

Brown filed suit in this Court on January 18, 2008 and filed a Second Amended Complaint on June 19, 2008. Currently pending before the Court is Defendant Marjack's Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). When parties file cross motions for summary judgment, the Court must view each motion in a light most favorable to the non-movant.

*Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

**III.   ANALYSIS**

Brown asserts claims of sexual harassment and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and negligent hiring, training, and retention, negligent supervision, and intentional infliction of emotional distress. After reviewing the record, the Court does not believe any of Brown's claims can survive the Defendant's Motion for Summary Judgment. Plaintiff has not alleged any tangible employment action that would give rise to a prima facie case of quid pro quo sexual harassment. In her deposition, Plaintiff clearly states that her complaint arises from three comments Josiah made to her over the course of one day. Even if Josiah offered her rides home on the weekends on several occasions after this day, as the third party investigator report indicates, the comments were still not severe or pervasive enough for Plaintiff to make out a prima facie case of hostile work environment sexual harassment. Additionally, the Court must dismiss the negligent hiring, training, retention, and supervision claims as a matter of law because those claims must be based on a common law injury, not on an injury under a federal statue.

Finally, the Court will dismiss the intentional infliction of emotional distress claim per Plaintiff's agreement to its dismissal.

### 1. **Sexual Harassment**

Title VII prohibits employers from discriminating "against an individual with respect to . . . terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment constitutes prohibited sex discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). "There are two categories of sexual harassment that are generally recognized: harassment that creates an offensive or hostile work environment and quid pro quo sexual harassment, where sexual consideration is demanded in exchange for job benefits." *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 745 (D. Md. 2003) (citing *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983)). "Although quid pro quo and hostile environment sexual harassment claims both arise under Title VII, each type of claim requires proof of an element that the other does not." *Moser v. MCC Outdoor, L.L.C.*, 256 Fed. Appx. 634, 642 (4th Cir. 2007). The affirmative defense applies to both.

#### a. Quid Pro Quo Prima Facie Case

"[T]o establish quid pro quo liability, a plaintiff must prove 'that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" *Moser v. MCC Outdoor, L.L.C.*, 256 Fed. Appx. 634, 642 (4th Cir. 2007). "In order to establish a prima facie case of quid pro quo sexual harassment, Plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) Plaintiff's reaction to the harassment affected tangible aspects of

compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment and took no effective remedial action." Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 745 (D. Md. 2003) (citing Spencer v. General Electric, 894 F.2d 651, 658 (4th Cir. 1990)). With respect to the fourth prong, the Supreme Court has defined "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (U.S. 1998). "Although a 'tangible employment action' may not always involve economic harm, the Court stated in *Ellerth* that '[a] tangible employment action in most cases inflicts direct economic harm.'" *Reinhold v. Virginia*, 151 F.3d 172, 174-175 (4th Cir. 1998) (quoting *Ellerth*, 118 S. Ct. 2257, 141 L. Ed. 2d 633, 1998 WL 336236, at *13).

The Court finds that Plaintiff has not made out a prima facie case of quid pro quo sexual harassment. Plaintiff has not alleged any tangible employment action arising from Plaintiff's declining Josiah's alleged sexual demands. Plaintiff seems to base the claim on the allegation that Plaintiff had to endure working under Josiah after he made three offensive comments. Plaintiff alleges "Plaintiff's complaints regarding Mr. Josiah were ignored by Marjack which altered the terms and conditions of her employment with Marjack." (Compl. ¶ 26.) But, enduring work with a sexual harasser does not constitute a tangible change in a condition of employment as this type of change does not constitute the sort of concrete alteration in employment status a Plaintiff must show to make out a prima facie case. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (U.S. 1998).

Additionally, threats of changes in employment conditions do not qualify as actual changes in tangible employment conditions for the purposes of making a prima face case of quid pro quo sexual harassment. Moreover, even if threats were sufficient to establish the fourth prong of the prima facie case, there is no evidence in the record that Josiah ever threatened any aspect of Plaintiff's employment. In the Complaint, Plaintiff alleges that Josiah showed Plaintiff a condom and said he could get her in trouble because his wife worked upstairs, but this allegation is not supported anywhere in the record.

As Plaintiff has not shown any evidence indicating she suffered a tangible change in employment conditions, the Court does not believe that Plaintiff meets the fourth required showing for a prima facie case of quid pro quo sexual harassment. Thus Plaintiff fails to show sexual harassment based on this method.

### b.     Hostile Work Environment Prima Facie Case

To make a prima facie case of sexual harassment based on an abusive or hostile work environment, a plaintiff must show that "(1) that she was harassed because of her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Sraver v. Surgical Monitoring Servs.*, No. 05-1331, 2006 U.S. Dist. LEXIS 55222, *10 (D. Md. July 27, 2006). To determine whether the plaintiff made a sufficient showing of abusive work environment, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work environment." *Sraver*, 2006 U.S. Dist. LEXIS 55222, *10 (quotation marks and citation omitted). Inappropriate and cruel comments often do not

alone create an abusive environment. Indeed, "sporadic use of abusive language," and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Sraver*, 2006 U.S. Dist. LEXIS 55222, *13-14.

The comments in this case fall short of the requirements for a showing of a prima facie case of hostile work environment. The comments occurred over the course of one day, and consisted of three sexually explicit remarks on Plaintiff's physical appearance and reproductive capacity. Moreover, the record indicates that the comments stopped once Plaintiff, that same day, reported the offensive comments to her supervisor, Carl Booker. (Brown Dep. 62-63, 65, 87.) Plaintiff states, "beginning in mid-August, Mr. Josiah would continually make sexually explicit comments to Plaintiff at work," (Doc. 67 at 31), but Plaintiff's deposition testimony directly refutes that contention. The evidence Plaintiff cites for her assertion that this commenting occurred "continually," (Brown Dep. 36, 44, 45, and Exhibit G, Eagles 3 LLC Final Investigative Report 13-14), does not actually indicate the abuse was frequent. Instead, Brown's Deposition indicates she was first harassed two or three weeks after she started work (Brown Dep. 36), that Josiah once offered her a ride home (Brown Dep. 44), and that Josiah commented "her butt way bigger than yours." (Brown Dep. 45.) Plaintiff also cites the Eagles 3 Report for her proposition that the harassment was continual. This Report indicates that Josiah made one offensive comment in September, and then a week or two later made another comment, and "on more than one occasion" asked her to work weekends and offered to pick her up and drive her home. (Doc. No. 67, Ex. G, at 14.) Notably, the report does not say the harassment was continual. Even if these three comments occurred over the course of a few weeks, the evidence falls short of the standards this Circuit has set for evidence comprising a prima facie case of severe or pervasive sexual harassment. *See Bowen v.*

*Tempur Production*, 2005 U.S. Dist. LEXIS 1213 *5 (W.D. Va. 2005) ("as a matter of law [] the incidents complained of were not pervasive or severe enough to create an abusive environment. Osborne's most abusive behavior lasted less than eight work shifts and stopped after Bowen complained to a supervisor").

Additionally, the comments, though obviously deplorable and sufficient to make Plaintiff uncomfortable, did not rise to the level of severity that this Circuit requires for a prima facie case of severe or pervasive sexual harassment. Indeed, the comments constitute the sort of "sporadic use of abusive language" that does not satisfy the prima facie case requirements in this Circuit. Courts in this Circuit have granted summary judgment to employers based on similar conduct. *See Sraver*, 2006 U.S. Dist. LEXIS 55222, *2 (granting summary judgment on the ground that comments regarding plaintiff's sex life, such as "'Good morning/good afternoon, Carole, did you get laid last night?' or 'How's the sex life?'" made on a regular basis, did not create an abusive work environment). Nor has Plaintiff alleged any unreasonable interference with her work stemming from these comments. Thus, Brown's allegations fall short of a prima facie case of a hostile work environment sexual harassment claim.

As Plaintiff has failed to make a prima facie showing of sexual harassment and sex discrimination, the Court will dismiss this claim (Count I), and will not address Defendant's arguments regarding affirmative defenses.

    **2.**    <u>**Intentional Infliction of Emotional Distress**</u>

Defendant moves to dismiss this claim on the ground that Plaintiff has pleaded insufficient facts to make a claim for intentional infliction of emotional distress. In its Opposition to Defendant's Motion for Summary Judgment, Plaintiff agrees to dismiss the claim for intentional infliction of

emotional distress. (Doc. No. 63 at 39.) Thus, the Court will dismiss this claim.

### 3. **Negligent Hiring, Training, Retention, and Supervision**

A claim for negligent hiring, training, retention, or supervision requires a plaintiff to show:

> [T]hat her injury was caused by the tortious conduct of a coworker, that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

*Bryant v. Better Business Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (citations omitted). It is well established that Title VII violations do not qualify as tortious conduct for the purposes of claims of negligent hiring, training, retention, or supervision, because these claims must be based on common law injuries. Sexual harassment claims based on Title VII "were not actionable at common law in Maryland. Therefore, this Court may 'not impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law.'" *Bryant v. Better Business Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (citing *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1223 (W.D. Tenn. 1993)); *see also Braxton v. Domino's Pizza Llc*, No. 97-1501, 2006 U.S. Dist. LEXIS 92902 (D. Md. Dec. 21, 2006) (noting plaintiff had appropriately agreed to dismiss her Title VII-based negligence claim, and finding that a negligence claim based on § 1981 could not stand because it was not based on Maryland common law).

Plaintiff clearly premises her negligence argument on her Title VII sexual harassment claim, explaining in the negligence-based counts of her Complaint, "Defendant owed the Plaintiff the duty to not discriminate against Plaintiff based on her gender." (Compl. ¶ 39.) Plaintiff simply does not address the clear precedent Defendant provides stating that negligent hiring and supervision claims cannot be based on Title VII violations. Absent any argument for why the Court should veer from

clear precedent, the Court cannot allow these claims to stand. Thus, as a matter of law, Plaintiff cannot prevail on her claims for negligent hiring, training, and retention (Count III) and negligent supervision (Count IV) in this case.

## IV.     CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion for Summary Judgment. A separate Order will follow.

   January 29, 2010                                                                /s/             
         Date                                                                    Alexander Williams, Jr.
                                                                               United States District Judge